And we will now hear Eric in the last case of the day, which is Meraz v. Pfeiffer. Good morning, Your Honor. It's Tony Farmani on behalf of Mr. Meraz. Good morning. Your Honor, there are several issues that have been certified. And I'll begin with the issue of the Fifth Amendment, the coercion issue, and the related IAC claim, the Indefective Assistance Counsel claim. And, Your Honor, the Fifth Amendment issue is fairly straightforward because we have a case, and really if ever we have a case which is exactly on point, and that's the Supreme Court case of Fulminante. Before we get there, where in the record did your client raise a stand-alone Fifth Amendment voluntariness claim? I don't see it in the state habeas petition. I don't see it in the First Amendment habeas petition in the federal court. Where in the record was this raised? Your Honor, it was raised in the California, when he filed the petition for a habeas petition in the California Supreme Court, and this was explained in a reply brief, because the government brought up the issue about exhaustion, and it having not been in the federal habeas petition. And I point it out in there, Your Honor, there are two reasons why the exhaustion argument has no merit here. One is because he did, in fact, he did, in fact, raise a claim. In the Fifth Amendment, where? It's in the petition. I can give you the page numbers, Your Honor. Please do. Yes, yes. This would be Volume 2, page number 278. And then it goes on to 279, and he explains, and he cites the Fifth Amendment, and he cites the controlling Supreme Court case. And he explains the circumstances leading up to the interrogation and the interrogation itself. And then he also attaches to his petition what he had told the police, the office, in fact, when they arrested him, what had happened, that he had given a confession under duress. So those are the, that's how it was raised. That's your claim, and that's where it was raised as a standalone issue, right? Yes, Your Honor. Okay. Yes, Your Honor, and the second part of it would be, if you want me to explain that, that is, it's within the ineffectiveness of counsel claim. In other words, a court sitting and looking at this issue, the IAC issue, would not be able to resolve that issue without addressing the Fifth Amendment issue first to determine whether or not, in fact, there was some basis for deed. So when I ask you whether it was a standalone, you're saying this is kind of a companion to the IAC claim. I'm saying they're both, Your Honor. I'm saying there was a standalone that he raised sufficiently as a pro se petitioner in the state court with respect, and there's a case right on point from the circuit that says, if you cite a case, the court has a duty to look at that case. They need to look to see what that case says, and he does not only cite that case, but he also goes further, the Fulman Blounte case, and he goes further and explains the circumstances. In addition to that, Your Honor, as I'm saying that it's tied to the IAC claim, they're intertwined with one another, they're one and the same. I think it was a decision from Your Honor that decided that in another case that was very similar to this case. And then, going to the merits, if I may, Your Honor, again, it's very, it's great for me because there is an actual case right on point where the facts are a lot less severe than what happened here, and the U.S. Supreme Court has said, well, that's coercion, and the confession is not admissible. And which case are you referring to? The Fulman Blounte case. Fulman Blounte. Yes, that case has a lot less severe facts, egregious facts than what happened in this case, and the court threw out the confession. So the Fifth Amendment claim by itself, Your Honor, should be sufficient for Mr. Morales to be able to get relief, and the reason for that is because when the California Supreme Court denied the claim, it summarily denied the claim when there was an actual case right on point that would have required the case to grant relief under Fulman Blounte. So that would be an argument with the Fifth Amendment claim, Your Honor, and going to the Sixth Amendment claim, the IAC claim. That claim, it doesn't apply because there was no hearing. So the Section 2254D2, which is the unreasonable determination of the facts, we know from case law that a court faced with conflicting facts must hold an evidentiary hearing to resolve those conflicts. It could not make a determination as to the credibility of the witnesses based on the papers alone. And here the California Supreme Court had allegations which under California law and under U.S. Supreme Court law we know that they're supposed to accept those allegations as true. You said, if I understood you correctly, that it does not apply to this case. It does not apply to the IAC claim. Why? Because the court made an unreasonable determination of the facts. Two reasons are unreasonable. That's part of the language of AEDPA. Correct. When that happens, I guess what I'm saying, Your Honor, is AEDPA applies to all claims so long as they were adjudicated under merits. If a claim was adjudicated under merits, AEDPA automatically applies, and then you go through 2254D1 and D2 to see if you can get it out of AEDPA. Those are all sanctions of AEDPA. Correct. Perhaps I misunderstood. You said it didn't apply and you're citing all sections of AEDPA, so I'm confused. What the two is to look at, Your Honor, AEDPA does apply, again, because the claim was adjudicated, but it doesn't apply in the sense that they made an unreasonable determination of the facts. So we satisfy AEDPA. You're saying you satisfy AEDPA, it applies, but you think that you get out from under your problem by applying AEDPA. Is that what you're saying? Correct, Your Honor. Correct. That's exactly what I'm saying. I apologize for not taking it as well. Your Honor, the other issues, and I think I get the first two issues, I think they're quite simple, because of the Formonante case. The other issues are a little bit more tricky, Your Honor. I do admit that, but I wanted to turn to the Masada issue for a moment, and that being whether or not this was pre-indictment, post-indictment, and then also about the Confrontation Clause claim involving George Masada. You're talking about whether the critical stage had been reached. Yes, Your Honor. After the Marazzi's conversation with McConnell, right? Yes, Your Honor. What's your best argument to that effect? My best argument, Your Honor, would be because the U.S. Supreme Court has made clear that in order for us to determine what is a critical confrontation, you look at the facts and circumstances of the case, and the facts and circumstances of the case here are very clear. The other problem for Messiah is McNeil, because it's offense-specific, and it had the Sixth Amendment right to counsel attached for the offense that is relevant. That's really the question. That is a question, Your Honor. I do admit that the case law is such that I guess one way to read it would be a technical attachment. In other words, it has to be an actual indictment or some sort of a complaint for that attachment to the relevant charge. Correct, for the relevant charge. My argument would be somewhat related to the U.S. Supreme Court cases that talk about what is a critical confrontation. In other words, aside from the charge, aside from the indictment itself having been issued, what other circumstances are there where it becomes your right to counsel attaches? And the court has said there are, in fact, circumstances where the right attaches to the indictment when you are the prime suspect, in a sense. You are the person who... And what case would you cite to that effect? I would say the case I would cite, Your Honor, for that, and I have it right in front of me, if I may just pull it up for a moment, would be the Escobedo, Your Honor. The Escobedo v. State of Illinois, Your Honor, the U.S. Supreme Court. Was Messiah decided after Escobedo? Yes, you're right. Messiah is generally understood as creating a bright light to what is indictment. That's what attaches, and Escobedo is a much more sort of confusing case. Correct. But the law seems to be clarified with Messiah, it's indictment, and the McNeil says it's event-specific, and here you're not indicted on the relevant offense, and so that seems to be a problem. I acknowledge the tension, Your Honor, that is a challenge in this case with respect to the Messiah issue. It's a difficult case because you would want to say this was a Messiah violation had it not, you know, perhaps the indictment having issued for that particular crime. So you're saying that had the facts of this case been different, and your client had been indicted, you'd be in good shape? Yes, Your Honor. But he wasn't? McNeil would have come out the other way. Yes, I do agree, Your Honor. That's why I said at the beginning those are kind of tricky issues, but the Velasco issue, which is a confrontation cause issue, if I may speak to that one, Your Honor. Okay. That one, you know, one of the oddest things about this case, Your Honor, is that the chief accuser, the person that the jury more likely than not relied upon to come up with a verdict was George Velasco's statements about how he said that he was talking, quote, unquote, excuse my language, shit, as he walks in, as they go into the territory of the rival gang, and how he pushed the window down, he's still talking trash to the other people, and that is what the jury was hung upon. In fact, as the court is aware, the jury did not want to come up with a guilty verdict. There were 10 to do divided on the self-defense. And they come to court, and the court says, well, are you hopelessly deadlocked? And they say, yes, we're hopelessly deadlocked. Says, is there anything else that I can do to help? And they say, no. Nevertheless, without asking any of the counsel, the court sends them back for deliberations. So they go back, they ask for more testimony, more documents to review. They come back a few hours later with a verdict. And when the court is talking about the instructions, about the instructions that was given to the jury during the deliberations, about the self-defense instruction, the court relies specifically on the statements that George Velasco had related to the confidential informant, Indio. And this is important, because to say that Velasco's statements are non-testimonial when his own brother had been interrogated by the same CI about the crime. His two brothers had been interrogated a few months before that. Then he lands in jail, and he's sitting there, and as he's talking to a police officer, he's sitting there and giving, he's basically blaming everything on Mr. Meraz, and paying himself as an accessory. That's a classic situation when someone is giving testimonial statements. And if it were just some, if it were in the same trial, we know it would have been a brutal violation. We know because it was seen in the same trial, and the question would become, was it testimonial or not? And you want to, it's hard to imagine a case more testimonial than this case. And I think that's the issue with respect to Velasco, is whether or not his statements were in fact testimonial. What's the best case, Sinus, to backing up your point about confrontation in these factual circumstances? There are many cases that have come out, Michigan v. Bryant, there are Supreme Courts that have come out recently that talk about if the primary objective is to gain evidence to be used at trial, if that's the primary objective, then it's testimonial. And this is not only the primary objective, this is the only objective they had, was to get this guy to confess, or confess and blame his co-defendant. And he does a great job at it. I mean, he does a great job at it. He makes Meraz look like a, and he was under duress. As you know, Velasco was definitely under duress, more so than anyone else, because he's actually being directly threatened for doing a drive-by shooting, which is prohibited by the Mexican mafia rules. So that would be my argument, Your Honor. My argument would be that that was primarily, if not chiefly, used as evidence against him. If I may, I can leave. Take some time if you like. Yes, if I may. Please. Yes, thank you very much, Your Honor. Very well. Let's hear from the government. Good morning, Your Honor. May it please the Court. Louie Carlin for Respondent. The Fifth Amendment claim is here only in the context of an IAC claim. The stand-alone Fulminante claim has never been made. I was very careful in my brief to show the only place where it was mentioned, and that is in the supporting facts to a separate claim, to the IAC claim. So, yes, it was mentioned. Your Honor, a distinction between 14th Amendment voluntariness and Fifth Amendment voluntariness, or both? Oh, no, Your Honor. I'm drawing a distinction between the Sixth Amendment and the Fifth Amendment. That the only mention of Fulminante is in a Sixth Amendment context. But I'm looking at, you know, he cited page 279 of the excerpt for the state habeas petition, and then the federal habeas petition that you put in the SCR, page 24. They both have the same sentence, and it follows a citation to a 1961 case. It says, Petitioner was convicted on the basis of a confession that was not voluntary. Dot, dot, dot. Fifth Amendment. Oh. It's a per se pleading, and it rambles on and on for pages. Indeed. That looks like a Fifth Amendment voluntariness assertion tossed in there. You know, Your Honor, it does. And I have to say, when I read this, when I read the federal petition, I didn't even see the Fulminante argument as a legitimate part of the IAC claim. Because it had all been phrased in terms of a Sixth Amendment violation. So I missed it. And the district court, the magistrate judge, read it broadly and said, yes, in the IAC claim, it is not merely IAC for failing to bring a Messiah claim, for failing to argue Miranda. It's also the Fulminante. I think that was a fair job of reading the pleading broadly. But it is only there, it is only mentioned within the claim about ineffective assistance of counsel. I'm looking at this page, and it says what I just read, and then the page before is Fulminante. I'm sorry, what are you looking at? I'm looking at SCR 23 and SCR 24. SCR 23 has Arizona versus Fulminante, coerced by confession, coerced by informant. And then SCR 24 has the sentence that I read before about convicted on the basis of confession. It was not voluntary Fifth Amendment. Right, and that is in Ground 2, the ineffective assistance of counsel for failure to investigate. So 23 has the heading. So is it your position that there is no standalone Fifth Amendment claim? That's what I'm saying, Your Honor. Out of the IAC? Absolutely. So it's not like he doesn't get a hearing on whether there was a coerced confession, but it has to be within the Ground 2, the ineffective assistance. From your perspective, what impact does it have on our analysis? What it means is simply that relief cannot be granted on the basis of Fulminante alone. The U.S. Supreme Court in the Premo case makes it very clear that these are distinct claims. So the issue has to be done within the context under the rubric of SCR 24. I'm just not sure we can screw pro se papers with this kind of granularity. Well, I don't think it's granularity here because Ground 2 is a Sixth Amendment ineffective assistance of counsel claim. And that's what it is. I just read, it all seems to be under Ground 1, which is called Versailles violation, even though it says Fifth, Sixth, and Fourteenth Amendments. This is kind of a bit of a mush. It's a bit of a mush, Your Honor. Indeed. We don't really allow pro ses to slide when they kind of dump everything on the table and you see the pieces there and they put the wrong label on it. There is absolutely. But we get to the merits of these claims rather than, you know, whether or not it was properly presented. I think yes, but the answer is we get to the merits under the Sixth Amendment and we don't look at it as a standalone because it absolutely isn't there. Yes, you can take it apart and you can find cases cited for one thing or another, but we can't reinterpret, we can't redraft the petition. So he gets his day on court, but in the claim that he liberally construed, made, liberally construed, yes, Fulminante, but only within Sixth Amendment. Ground 2 starts on SCR 25, so the things I've read to you from Fulminante and the Fifth Amendment Voluntariness Claim are not under the IAC claim. SCR. It's labeled under Messiah, which is gibberish, but, you know, he says Messiah, 5th, 6th, 14th. He's using Messiah, it actually doesn't summarize everything he dumps into these pages, but Ground 2 comes after that, so this just isn't correct to say that it's all under IAC. Well, SCR 23, where he mentions it, is case sites that are supporting Messiah. That's SCR 23. That's Ground 1, but that's also Messiah, but then he says 5th, 6th, and 14th, and he fleshes it out with Voluntariness stuff with Fulminante and Fifth Amendment Voluntariness, and then after he's finished all that, then he goes to Ground 2 and Effective Decision. So it just seems that you're just wrong in saying that it's all under IAC. I just don't see that. I think we do have to respect the drafter to some degree, and certainly the district court had no idea there was a Voluntariness stand-alone claim. It was never listed as one of the issues before the court in the R&R. So we're going to allow the heading of Messiah to control the substance of what he says in these pages, per pro se. I think if he argues a claim under the Sixth Amendment and he mentions Messiah, I think, and he claims it's a Messiah claim, bold page on Arizona versus Fulminante, and then goes on to say about the Fifth Amendment protects against confessions that are not voluntary. Your Honor, that's in his supporting cases section. His first case is a Messiah claim. His second case is a Messiah case. His third case is the Fulminante case that you've read. The next is Senate Bill 687. And then he goes down to Case Letter K. We can redraft this petition for him, but I think that goes way too far. We don't agree with you that a freestanding Voluntariness claim under the Fifth and Fourteenth Amendments has not been preserved. Why would you? I assume you do not think you lose in that circumstance. So why don't you explain why you think you would win in that circumstance. I will, Your Honor. And the basic reason for that, Your Honor, is that this is not Fulminante. This is not a coercion case. This is a trickery case. What case? This is a trickery case. Okay. So this Court's longstanding authorities, and based on Supreme Court authority, is that trickery, deception do not count as coercion for purposes of a coerced confession under the Fifth Amendment. And what the district court did correctly was look at the sources of information, the evidence in front of the Court, and carefully read the transcript, which is the most important part. And when the transcript itself is read, it becomes very clear that Mr. Kano wasn't scaring, wasn't trying to frighten Mr. Meraz. He was trying to trick him and lull him into a false sense of trust. And I've laid this out in the brief, but in excerpts of record 91 is where the conversation gets going in earnest. And Mr. Kano never says at any point, the Mexican mafia thinks you've committed a drive-by shooting and you're in trouble. Never. What he says is, there's this fellow named Bozo who's trying to smut you up. Now, I hate Bozo. And he says, and I've got a lot of love and respect for you, and so do the homeboys, the Mexican mafia. Before I make any decision about Bozo, not decision about you, about Bozo, I need to know whether you're lying about what happened with the Avalos murder. And then the next. He had the baby in his arms at the time. So, the baby in his arms is, that goes to the question of whether it is a proscribed drive-by shooting according to the Mexican mafia. So, in fact, when Mr. Meraz testifies, he says that Kano said, the Mexican mafia said you've got a baby in your arms. That's nowhere, that's nowhere in the transcript. It was never said. Kano says, and this is at ER 93, before I decide what to do with Bozo, I need to hear your side. The next page, on page 94, he says, I need you to trust me. And he says, Mr. Kano says, I'm here on a murder. And this is supposedly a big example of coercion. I'm here on a murder, okay? I'm here on an execution-style murder. And he says, I did it because he was a rat. And what does he say? Not that you're in trouble. He says, you could put me away for a long time, but I trust you. So, as a district court, as a district court found, he was trying to soften up. He was trying to trick him. But at no point did he try to scare him. This is not fulminante. Fulminante, the holding of fulminante is very clear. And that is that fear of physical violence absent protection from a friend. That's the pain case as quoted in fulminante. In fulminante, based on the finding of a credible threat of physical violence, we agree with the conclusion that fulminante's will was overborne. What happened there? Fulminante is charged with a killing and assault of a minor. He's been getting roughed up. And the CI says, I can help you with that. I can protect you if you confess. Clear threat of violence, fear of violence, nothing in our case. We have deception. No evidence of fear. So, from your perspective, you still think we should not read this broadly? It's part of the Sixth Amendment IAC claim. But if you do have a standalone claim, this isn't fulminante, you've got trickery, not physical violence or threats of physical violence. Is that right? That's exactly it, Your Honor. I think, in a sense, you come to the same thing. It's very hard to do the Sixth Amendment analysis without looking at the strength of the motion you should have brought. And what's your best case that trickery of the nature we have here is okay? This Court's decision, U.S. v. Crawford, 372 F. 3rd, at page 1060-61. And that's looking back to the Frazier v. Cupp, the U.S. Supreme Court case, 394 U.S. 731. Also, United States v. Miller, deception does not render confessions involuntary, 984 F. 2nd, at 1031. If the Court would like me to talk about the Messiah case. Let me ask my colleague, do you have any specific questions that we want to ask the government? No. I guess now you can do whatever you like. In that case, I will just very quickly. My friend cited Escobedo as his best case on Messiah. The United States Supreme Court, as I wrote in my brief, has firmly stated that that statement in Escobedo is dicta. So it has moved away from that test and has adopted the clear bright-line rule of charging or formal indictment. Velasco's statement is absolutely non-testimonial, made unknowingly to a confidential informant. That's been held in every court to be non-testimonial. So the default there is a pure analysis of due process and no court has ever found admission of a statement like that or of any statement to be a violation of due process if it was subject to state hearsay law, as it was here. So with that, I will submit. Thank you very much. All right. So you have some rebuttal time. Yes, Your Honor. If I may. Your Honor, the Formamonte case, Formamonte wasn't charged yet. He hadn't been charged yet. There was rumors going on that he had done something to a minor. This is a friend of his. This is a person who had befriended him for a few days and had been talking. He was free to leave at all times. He stipulated that he wasn't in fear. He had been in prison before. He had a rap sheet. He had been in prison three separate times. Now, let's talk about Moraz for a moment. Moraz gets in there. He's 18 years old. The crime has happened at 16, when he was 16. He's in a cage upstairs with a guy who is saying to him that, I run the C-Squad. Where you're at right now, I run it. And whether it was a drive-by shooting or a baby in the hand, it was something that whoever was up there, it was concerned about. And maybe there was another actor here, Bozo, involved to kind of sweeten the deal, throw it in there to just kind of make it more of a credible threat. But I can't imagine any more. I mean, this doesn't have to be a direct threat from the CIA. He didn't have to say, I'm going to go ahead and shoot you. And forget about the execution style. I mean, that has really nothing to do with anything. What he does tell Moraz is that, I know where your mom is. I know your family. And I need to clear this up. You need to tell me what happened over and over again before I send you, before you go up there, before I can vouch for you. How is that any different, if not more severe, than what happened for Monante? For Monante, you know, to think of it, Moraz, he, if the question is what motivated him to confess, was it triggering at the point that he starts talking, there is no triggering at that point. He says not to position that this was a veiled threat. Veiled threat? I would say this was a threat kind of like the Payne case, where he interrogated, goes into the cell, the defendant's cell, and says, look, there's an angry mob waiting for you outside. And the Payne case, the defendant didn't even know there were people outside. He had no clue. It was a lie. It was a ruse. And he says, if the only way I can possibly, and he says, I can try to fend them off and keep them at bay if you tell me what happened. I mean, this will be here, we're talking about, he's saying there's a guy waiting for you upstairs. Where are you going to end up? He's waiting for you upstairs. I need to know what happened to clear this thing up, if I can vouch for you. Okay. Other questions by my colleague? Very well. Thanks to both counsels for your argument on the case. We appreciate it. This case is now submitted and the court stands adjourned for the day. All rise.
judges: Kelly, SMITH, COLLINS